



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,.       Case No. 2:17-CR-00073-PD
.
                Plaintiff,   .
                             .    U.S. Courthouse
        v.                   .    601 Market Street
                             .    Philadelphia, PA 19106
MARTIN KENNEY, et al.        .
                             .
                             .
                Defendant.   .
                             .    April 25, 2017
. . . . . . . . . . . ..           9:33 a.m.

FILED

JUN 19 2017

KATE BARKMAN, Clerk
By _____ Dep. Clerk

SHOW CAUSE HEARING TRANSCRIPT
BEFORE HONORABLE PAUL S. DIAMOND
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff,            SARAH T. DAMIANI, AUSA
the United States:            DANIEL VELEZ, AUSA
                              U.S. ATTORNEY'S OFFICE
                              615 Chestnut Street, Suite 1250
                              Philadelphia, PA 19106

For Defendant,                PATRICK J. EGAN, ESQUIRE
Martin Kenney:                NATHAN HUDDELL
                              FOX ROTHSCHILD LLP
                              2000 Market St 10th Fl
                              Philadelphia, PA 19107

Audio Operator:               BRIAN JOHNSON

TRANSCRIBED BY:               GILLIAN LAWRENCE, CER-255, CET-255
                              Lawrence Court Transcription & Video
                              P.O. Box 530790
                              DeBary, FL 32753
                              386.216.5921

            Proceedings recorded by electronic sound
      recording, transcript produced by transcription service.

2

I N D E X

PAGE

ORDER TO SHOW CAUSE HEARING                              3



EXHIBITS                                    ID.   EVD.

NONE

3

```
1                (Call to Order of the Court.)
2                JUDGE PAUL S. DIAMOND:  Please be seated everybody.
3                THE PARTIES:  Good morning, Your Honor.
4                THE COURT:  Mr. Velez.
5                MR. DANIEL VELEZ:  Good morning.
6                THE COURT:  Ms. Damiani.
7                MS. SARAH DAMIANI:  Good morning.
8                THE COURT:  Mr. Egan, who is with you.
9                MR. PATRICK EGAN:  Good morning, Your Honor.  Nathan
10   Huddell from Fox Rothschild as well.
11               THE COURT:  And I see Mr. Hawthorne here in the
12   courtroom --
13               MR. HAWTHORNE:  Yeah.
14               THE COURT:  -- good morning --
15               MR. HAWTHORNE:  Yes, Your Honor.
16               THE COURT:  -- Mr. Hawthorne.
17               MR. HAWTHORNE:  Good morning.
18               THE COURT:  I have a number of questions before we
19   proceed -- first of all, I issued an order directing Mr.
20   Kelleher's last known counsel, and Mr. Egan who is representing
21   Mr. Kenney, to indicate whether their clients would be here and
22   Mr. Kenney indicated he represented -- I'm sorry, Mr. Egan
23   indicated he represented Mr. Kenney and that Mr. Kenney would
24   not be here for the reasons stated in Mr. Egan's letters.  Both
25   the lawyers who had represented Mr. Kelleher indicated they
```

4

1   didn't represent Mr. Kelleher but they were transmitting Mr.

2   Kelleher's intention not to be here -- does anyone have

3   anything to add to that?

4          MS. SARAH DAMIANI:  No, I spoke with counsel Tom

5   Breen (Phonetic) and it was his position that they were

6   consulted but that they did not represent Mr. Kelleher in these

7   proceedings and weren't in contact with him.

8          THE COURT:  All right.  I think it's simply important

9   to note that they -- everybody was aware, that is to say both

10  gentleman were aware of this proceeding and have not attended,

11  are in foreign countries because that affects the Speedy Trial

12  Act determination.  It was my intention to proceed on the basis

13  of a felony charge here; and, therefore, I ask the question,

14  shouldn't these defendants be indicted first; don't they have a

15  Fifth Amendment right to indictment if they're being charged

16  with a felony?

17         MS. DAMIANI:  They can be charged by indictment and -

18  - or information.  Because it is a felony that's something the

19  office will consider.  It doesn't -- it's not required that

20  they be charged, the Rule 42 notice is sufficient for the

21  purposes of this hearing and setting this trial.  If we were to

22  move forward with a jury trial and a felony charge then I think

23  an indictment is something that the office would consider.

24         THE COURT:  I think the Fifth Amendment requires the

25  issuance of an indictment before anybody can be charged with a

1  felony.

2       Would you care to opine, Mr. Egan?

3             MR. EGAN:  Your Honor, it's --

4             THE COURT:  Your client isn't waiving any defenses

5  with your presence here or with anything you say.

6             MR. EGAN:  Thank you, Your Honor because that's what

7  I was instructed to make my first statement so --

8             THE COURT:  No, no.  You -- and had Mr. Kelleher and

9  Mr. Kenney, interestingly, chosen to be here, they wouldn't

10 have waived any defenses, at least as far as I'm concerned,

11 that I made that clear before I even issued the civil contempt

12 citation.  But please go ahead.

13            MR. EGAN:  Well, understood, Your Honor.  However,

14 British counsel is advising Mr. Kenney that by appearing in

15 this jurisdiction he has -- would quote/unquote attorn to the

16 jurisdiction of the United States --

17            THE COURT:  Would what?

18            MR. EGAN:  -- and -- attorn A-T-T-O-R-N one I haven't

19 heard since law school and --

20            THE COURT:  I -- you beat me on that one --

21            MR. EGAN:  Well, you know, Temple.  But in any regard

22 -- and that might allow the plaintiffs to then proceed in the

23 British Virgin Islands which is kind of the crux of our defense

24 in this matter.  But, in any event, Your Honor, it's very

25 confusing, quite frankly.  The interplay between Rule 401 and

1  the Federal Rules of Criminal Procedure I think is a thorny

2  issue indeed, and we have done quite a bit of research on it.

3  I am not --

4          THE COURT:  Don't forget the Fifth Amendment which --

5          MR. EGAN:  Well, exactly and that's critical I think.

6  So certainly we would not waive our right to an indictment and

7  it is my view that an indictment should be considered in this

8  matter if it is the intention of the Court to proceed as a

9  felony matter, but I'm not really prepared to argue that at

10 this point.

11         THE COURT:  I mean, I believe no person can be

12 charged with a felony under the Fifth Amendment, except by

13 indictment unless he or she waives indictment.  And so I will

14 weight the government's consideration of the issue.  I can't --

15 it's your grand jury, Mr. Velez/Ms. Damiani but I -- I believe

16 they have to be indicted.  And as I say it is my intention --

17 it was my intention and remains my intention to proceed with a

18 felony charge.  And the government in it's pretrial memorandum,

19 which by the way was an excellent memorandum thank you,

20 indicated that I should appoint counsel for Mr. Kelleher.  My

21 best information is that Mr. Kelleher is a multimillionaire and

22 you suggest that I should appoint the public defender to

23 represent a multimillionaire.  I am not prepared to do that.

24    If Mr. Kelleher would be willing to fill out a CJA

25 affidavit indicating his assets and so forth, which is

1  something that Mr. Hawthorne -- a question Mr. Hawthorne has

2  been trying to ask him for years -- if he were prepared to do

3  that and he had no assets, of course, I would order -- had the

4  requisite lack of assets I would certainly appoint counsel for

5  him.  But he had counsel here in December, as did Mr. Kenney,

6  although it wasn't you, Mr. Egan, and I don't see how I can

7  appoint counsel for him given that he has invested a

8  substantial amount of money in the Cayman Islands, Cayman

9  Islands litigation,  I just don't see how I can do it, although

10 I'm prepared to revisit that if he, in fact, has hit a bad

11 patch.

12         MS. DAMIANI:  You're -- it's my understanding through

13 Tom Breen that he is no longer as financially successful as he

14 once was and that, you know, I know that affects his position

15 in the civil litigation as well so --

16         THE COURT:  Well --

17         MS. DAMIANI:  -- I'm sure that's his position.

18         THE COURT:  -- Kenney, Kenney, Kelleher and I'm

19 losing, I'm losing it --

20         MS. DAMIANI:  Lohman.

21         THE COURT:  Lohman, thank you.  Mr. Lohman was here

22 in December and he certainly -- I mean, he satisfied Mr.

23 Hawthorne as to what his holdings -- what his portfolio was and

24 CIGNA settled with Mr. Lohman in the civil dispute for --

25         Was it $225,000, Mr. Hawthorne -- $275,000?

1    MR. HAWTHORNE:  Two hundred and seventy-five
2  approximately, Judge.3
3    THE COURT:  Pardon?
4    MR. HAWTHORNE:  Yes, Your Honor.
5    THE COURT:  Yeah, $275,000.  I don't know that he's a
6  millionaire.  I, myself, would have trouble coming up with
7  $275,000 in cash but he was here with Mark Gottlieb, privately
8  retained counsel.  Even if Mr. Kelleher isn't the wildly
9  successful person he appears to be on this record, I can't
10  believe that he has so fallen from grace that he can't afford a
11  lawyer.  He certainly was able to afford one in December.
12    But if he's -- if he wants to submit an affidavit even
13  from wherever he is, if he submits an affidavit to me, and I'm
14  -- it is my hope, Mr. Egan, that your client can afford
15  counsel.
16    MR. EGAN:  Mine as well, Your Honor.
17    THE COURT:  But I'm prepared for either defendant to
18  appoint counsel if, in fact, either man can't afford counsel.
19  Does anyone have any suggestion?  This is -- you said this was
20  very confusing, Mr. Egan, and this is all terra incognita as
21  far as I'm concerned.  I'm hard pressed to think of the last
22  time there's been a proceeding like this in this courthouse and
23  I've certainly never participated in one.  And so I'm -- we're
24  -- I'm trying to proceed carefully because I would like to get
25  it right.

1    It's my feeling that -- I'm not sure when the speedy trial

2 clock starts to tick.  Given that both defendants are at large

3 and have refused to come to this country I don't -- I'm not

4 sure it's even started to tick.  If they are indicted once they

5 are indicted -- again, if they are not in the country I'm not

6 sure if the speedy trial clock would start to tick.  But if

7 this were a civil matter I would give both sides a case

8 management order, which I think is probably what I should do

9 here and I usually do that consulting with counsel.  How much

10 time does the government needs before it decides how it wishes

11 to proceed in this matter?

12    MR. DANIEL VELEZ:  Less than a week.  A week from

13 today we will know.

14    THE COURT:  All right.  Then I will let the

15 government inform me a week from today as to how it wishes to

16 proceed.  If the government wishes to proceed by indictment,

17 which I think as I say is constitutionally required, I know

18 most grand juries in this district I believe sit once a month.

19    MR. VELEZ:  Once a week.

20    THE COURT:  Oh do they sit once a week?

21    MR. VELEZ:  Once a week.

22    THE COURT:  Then would say three weeks be enough to

23 present this to the grand jury?

24    MR. VELEZ:  Yes.

25    THE COURT:  All right.  Then we'll have the

10

1    government's answer in a week.  Assuming it wishes to proceed

2    by indictment, the indictment will issue in a month and is -- I

3    have never proceeded against the defendant in absentia and I

4    seem to remember reading somewhere that it's generally not the

5    practice of the justice department -- if a defendant absconds

6    during trial that's different, but if the defendant is not here

7    at the outset of trial the government is loathe to proceed in

8    his or her absence.  Is that right?

9            MR. VELEZ:  That is correct.

10           THE COURT:  Okay.  Then I'm not sure how we proceed

11   if without committing to anything Mr. Egan I assume that if

12   your client is indicted he is not gonna come to this country to

13   face trial?

14           MR. EGAN:  Your Honor I'm -- I'll cross that bridge

15   when we come to it.

16           THE COURT:  Well, I suspect you're going to come to

17   it in a month and so unless the grand jury declines to indict,

18   given the government's pretrial memorandum, which I think

19   correctly states that the documents that it asks me to -- of

20   which it asks me to take judicial notice, establish probable

21   cause that your client and Mr. Kelleher are in contempt of this

22   court's order of October of last year.  I'll -- let me say,

23   I'll be surprised if the grand jury does not indict but it's

24   the grand jury's decision not mine.  I would respectfully

25   request that you -- consult with your client and your client

1  make a determination.  Mr. Velez has tried other cases in front

2  of me with multiple defendants and he, at least in the past,

3  was willing to try the case against some while others and I

4  think you're even familiar with one of those cases --

5            MR. EGAN:  Yes, Your Honor --

6            THE COURT:  -- Mr. Egan.

7            MR. EGAN:  -- I am.

8            THE COURT:  He was willing to proceed with some

9  defendants knowing --and it was a rather burdensome trial --

10  knowing he'd have to proceed only a few years later to try

11  essentially the same case when the others were extradited.  And

12  so assuming that's going to be the government's position here

13  that if Mr. Kenney shows up we'll have a trial and wait for Mr.

14  Kelleher then it's something that I would ask you to consult

15  with the government.  If there isn't going to be a trial

16  because your client isn't going to show up and the government

17  won't proceed unless your client shows up, then I assume

18  whatever extradition efforts the government can make it will

19  make.

20       You have to say yes or no --

21            MR. VELEZ:  Yeah --

22            MS. DAMIANI:  Yes, yes we will.

23            THE COURT:  As we like to say.

24            MR. VELEZ:  I'm sorry I was waiting for Ms. Damiani

25  to answer.

1        THE COURT:  In the event he could be extradited he

2   could be extradited and that goes for Mr. Kelleher, too.  In

3   the event neither can be, then it will simply be an open

4   indictment.  And -- but if he can be extradited or if he

5   chooses to show up, then I would treat this as I would any

6   other, virtually any other criminal case.  I would ask counsel

7   to consult and suggest to me when they would be prepared to go

8   to trial, when discovery would be provided, when motions would

9   be -- I know you've already filed a motion to dismiss which

10  I've denied, Mr. Egan.  But I dare say there will be other

11  motions you're going to want to file.

12        MR. EGAN:  Indeed, Your Honor.  Well, for starters we

13  will have discussions with the U.S. Attorney's Office prior to

14  indictment as we always do in every case.  We will file

15  whatever appropriate motions are required and by the situation

16  in the case law if indeed an indictment is forthcoming and we

17  will defend the case to the best of our abilities and whether

18  Mr. Kenney ends up ultimately accepting the jurisdiction of the

19  court and attorning --  and to use his British counsel's words,

20  attorning to the jurisdiction of the Court, is a fluid matter

21  that, you know, is -- has ramifications that are tied to the

22  civil case, speaking of Mr. Velez's other case which I'm very

23  familiar.  It's -- this is a far cry from a human slavery case

24  I would suggest --

25        THE COURT:  This is not a human trafficking case,

13

1   it's true.  And I understand that and I merely point out that

2   that case took several weeks to try and was a very difficult

3   case and because he knew that two of the defendants were here

4   and it would take several years for --

5           MR. EGAN:  Sure --

6           THE COURT:  -- the other two to get here he tried two

7   in 2011 and he tried the next two in 2015?

8           MR. VELEZ:  '15.

9           MR. EGAN:  Yeah, but he also has to -- the State

10   Department has to weigh in on these issues with extradition

11   and --

12           THE COURT:  Oh, I understand there is a whole world

13   of government agencies that will have to opine on this, I get

14   it.  I -- not only am I unfamiliar with this criminal contempt

15   procedure, compounding it is the fact that both defendants are

16   foreign nationals who dispute the jurisdiction of the Court and

17   who may or may not be able to be extradited to this country.

18     Is there anything more we need to discuss this morning?

19           MR. EGAN:  Not from the defense, Your Honor.

20           MS. DAMIANI:  Not from the government.

21           THE COURT:  All right, then.  If there's any need for

22   any kind of a case management conference as I say in every

23   case, certainly every civil case but criminal as well, I'm

24   happy to speak to counsel as long as your adversary is present

25   on the phone, in person, and either side is free to call my

1  clerk on procedural matters ex parte but if you want to talk

2  anything of substance then get your adversary on the phone and

3  I'll be glad to talk to you.

4          MR. EGAN:  Of course, Your Honor.

5          THE COURT:  And my thanks to all of you, good morning

6  to all of you.

7          MR. EGAN:  Thank you, Your Honor.

8          MS. DAMIANI:  Thank you, Your Honor.

9          MR. VELEZ:  Thank you, Your Honor.

10          MR. EGAN:  Have a nice day.

11          (The proceeding concluded at 9:49 a.m.)

12                    * * * * *

13

14

15

16              **C E R T I F I C A T I O N**

17          I, Gillian Lawrence, court approved transcriber,

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter, and to the best of my ability.

21

22  *Gillian Lawrence*

23

24  CER-255, CET-255

25                              DATE:  June 12, 2017

*Lawrence Court Transcription & Video, LLC * 386.216.5921*